IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ANDRE MICHAEL DUBOIS, <br><br> Defendant. | CRIMINAL ACTION FILE NO. <br><br> 1:20-CR-305-WMR-JKL |

# FINAL REPORT AND RECOMMENDATION

Defendant Andre Michael DuBois is charged in a three-count indictment with (1) unlawfully attempting to export firearms and ammunition from the United States to Dominica in violation of 18 U.S.C. § 554; (2) delivering a package with firearms to a common carrier without written notice of its contents in violation of 18 U.S.C. § 922(e); and (3) being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1).  [Doc. 24.]  The case is before the Court on Mr. Dubois's Motion to Suppress Suggestive Identification [Doc. 43], in which he moves to suppress an out-of-court identification made by Raymond Jones, an individual who previously worked with Mr. Dubois, and to preclude the government from having Mr. Jones identify Mr. Dubois at trial.  On May 10, 2021, I held an evidentiary hearing on the motion.  [*See* Doc. 64 ("Hr'g Tr.").]  Mr. Jones and HSI Special

Agent Charles Woodard, the case agent, testified.  [*Id.*]  After the hearing, Mr. Dubois filed a post-hearing brief in support of the motion [Doc. 66], the government filed a response [Doc. 67], and Mr. Dubois filed a reply [Doc. 68].  For the reasons that follow, it is **RECOMMENDED** that the motion be **DENIED**.

I. BACKGROUND

On April 23, 2018, a man went to an Express Copy Print & Ship store in Sewanee, Georgia, to ship two packages to Dominica via DHL.  [Doc. 1 at 3.]  He indicated his name was "Larry Davis" and provided false contact information.  [*Id.* at 4.]  DHL employees later x-rayed the packages and detected three firearms within the packages.  [*Id.* at 3.]

To identify the person who attempted to ship the firearms, agents reviewed surveillance footage, which showed the man was wearing a sweatshirt that bore the name "East Midtown Partnership."  [Doc. 1 at 4.]  Agents determined that East Midtown Partnership is a New York company connected with another entity called the "Doe Fund."  (Hr'g Tr. at 9, 19.)  Agents served a subpoena on the Doe Fund and provided copies of video clips of the surveillance footage and a single still image of the suspect wearing the East Midtown Partnership sweatshirt.  (Hr'g Tr. at 19; *see also* GX-1 [Doc. 61-1] (photograph).)

After the Doe Fund received the video clips and the photograph, its human resources department distributed them internally. (Hr'g Tr. at 7.) Raymond Jones, who was working with Doe Fund affiliate Ready, Willing & Able, received an email from his supervisor attaching a copy of the photograph and asking Mr. Jones whether he could identify the person depicted in the image. (*Id.* at 4, 7, 10-11.) Mr. Jones was not told why he was being sent the picture; rather, he was simply asked whether he knew who the person was. (*Id.* at 8, 10.) Mr. Jones also had no contact with law enforcement prior to seeing the picture. (*Id.* at 8.) Nor was he aware at the time that law enforcement was attempting to identify the person depicted in the picture. (*Id.* at 12.)

Mr. Jones told his supervisor and an HR representative that he recognized Mr. Dubois as the individual in the photograph.[1] (Hr'g Tr. at 9, 12.) At the evidentiary hearing, Mr. Jones explained that he was familiar with Mr. Dubois because Mr. Dubois worked with the East Midtown Partnership "some years" earlier when Ready, Willing & Able was serving as a sanitation services contractor. (*Id.* at 5, 9, 12.) Mr. Jones elaborated that in his position with Ready, Willing &

---

[1] Mr. Jones did not view any video because he was unable to access the file. (Hr'g Tr. at 10.)

Able he "overs[aw] field operations" and "assign[ed] guys to work assignments" and that he was able to identify Mr. Dubois from the photograph because Mr. Dubois had been a participant in one of the Ready, Willing & Able's programs. [*Id.* at 4-5, 7.] Mr. Jones stated that he had interacted briefly with him on a "few occasions." (*Id.* at 6.) Some of these interactions were face-to-face and he had no difficulty seeing Mr. Dubois's face. (*Id.* at 15.) He said that he knew Mr. Dubois only by his last name, and not on a personal level. (*Id.* at 6-7, 11.) Only after identifying Mr. Dubois did Jones spoke with law enforcement about the investigation. (*Id.* at 12-13.)

## II.   APPLICABLE STANDARD

To determine whether an out-of-court identification procedure violates due process, courts apply a two-factor test. First, the Court considers whether law enforcement used an unduly suggestive identification procedure. *Perry v. New Hampshire*, 565 U.S. 228, 241-42 (2012); *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). If the Court concludes that the identification procedure was not unduly suggestive, then the inquiry ends. If, however, the Court concludes that it was unduly suggestive, then the Court considers whether, under the totality of the circumstances, the identification was nevertheless reliable. *Diaz*, 248 F.3d at 1102. The Supreme Court has identified several factors the Court should consider

to determine the reliability of an identification, including: (1) the opportunity the witness had to view the suspect; (2) the witness's degree of attention when she viewed the suspect; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. *Id.* (citing *Neil v. Biggers*, 409 U.S. 188 (1972)).

### III. DISCUSSION

Mr. Dubois argues that the identification procedure was suggestive because Mr. Jones was provided a single photograph of a person wearing a shirt with the "East Midtown Partnership" name. [Doc. 66 at 10.] He contends that "agents created the inference" that the person in the photograph "must work or have worked for the company which heightened the possibility Mr. Jones would identify someone that was not the right person." [*Id.*] He additionally argues that the identification was not sufficiently reliable because Mr. Jones had only briefly encountered Mr. Dubois years prior. [*Id.* at 11-12.] On reply, he reiterates his argument that the identification was unduly suggestive because "the inherent suggestiveness of showing one photograph with a company logo . . . indicated to Mr. Jones that the person in the photo would be someone he knew" and because there was no subsequent attempt to see if Mr. Jones could identify Mr. Dubois

Case 1:20-cr-00305-WMR-JKL   Document 69   Filed 08/04/21   Page 6 of 9

"from among a photo array of individuals with a similar appearance." [Doc. 68 at 1-2.]

The Court readily concludes that Mr. Jones's identification of Mr. Dubois did not violate due process. Turning first to suggestiveness, the Court is not persuaded that any improper state conduct tainted Mr. Jones's identification and, thus, this is not a case in which the "photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification," or where the identification procedures "made it all but inevitable that [the witness] would identify [the defendant]." *Perry*, 565 U.S. at 238 (quoting *Simmons v. United States*, 390 U.S. 377, 384-85 (1968) and *Foster v. California*, 394 U.S. 440, 443 (1969)). The only involvement that agents had with the identification was preliminarily selecting the image of the suspect and providing it to the Doe Fund. At the time that Mr. Jones reviewed the image, he was unaware that it had come from law enforcement and he had had no interaction with agents. Nothing that any agent said or did prompted Mr. Jones to conclude that the individual depicted in the photograph was Mr. Dubois. While Mr. Dubois speculates that the company logo on the suspect's shirt "heightened the possibility that Mr. Jones would identify someone that was not the right person," and

6

emphasizes that Mr. Jones was showed only one photograph, the fact remains that Mr. Jones made the identification without any prompting from law enforcement. As the Supreme Court explained in *Perry*,

> The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing a jury to assess its creditworthiness.

*Perry*, 565 U.S. at 245. Thus, the Court concludes that the out-of-court identification procedure was not unduly suggestive.

But even if providing a single photograph to the Doe Fund were unduly suggestive, the Court concludes, under the totality of the circumstances, the identification was nevertheless reliable. Mr. Jones had the opportunity to view Mr. Dubois on a few occasions and they interacted closely, even if briefly. Mr. Jones testified at the evidentiary hearing that he knew Mr. Dubois from work and that even though their interactions were brief, they had interacted face-to-face, he knew what Mr. Dubois looked like, and he knew Mr. Dubois by name. Mr. Jones did not give a description of Mr. Dubois before or after identifying him; however, he was not asked to because his supervisor had merely shown the photograph to him and asked if he recognized the individual. Mr. Jones was also absolutely certain that Mr. Dubois was the person in the photograph. Finally, although Mr. Jones was

unsure how long it had been since he had last seen Mr. Dubois when he viewed the photograph, Mr. Jones still expressed confidence that he remembered what Mr. Dubois looked like, recalled his name, and recognized him as the person in the photograph.[2]  Accordingly, the Court concludes that the identification procedure was not so unreliable to rise to the level of a constitutional violation.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Mr. Dubois's Motion to Suppress Suggestive Identification [Doc. 43] be **DENIED**.

There are no further motions pending before me, and I am not aware of any impediments to the scheduling of a trial.  Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

---

[2] It appears from the transcript that Mr. DuBois may have been a participant in the Ready, Willing & Able's program at the time when Mr. Jones identified him from the photograph. (Hr'g Tr. at 7 ("When it was sent to me, they asked me could I identify the individual; and I was able to identify him as Mr. DuBois who was in our Gates Avenue program at that time.").)  This fact further strengthens the reliability of Mr. Jones's identification of Mr. DuBois.  However, even if Mr. DuBois had not been in the program at the time of the identification, Mr. Jones's identification is reliable for the reasons discussed above.

**IT IS SO RECOMMENDED** this 4th day of August, 2021.

_____
JOHN K. LARKINS III
United States Magistrate Judge